456

## WARD v. HOUSEMAN.
### No. 4749.

Court of Civil Appeals of Texas. Beaumont.
June 1, 1951.

Rehearing Denied June 20, 1951.

Sam Lipscomb, Beaumont, W. P. Sexton, Orange, for appellant.

Graham Bruce, H. E. Stephenson, Orange, for appellee.

R. L. MURRAY, Justice.

This is an appeal from a judgment of the district court of Orange County involving a will contest.

Stanford Ward, deceased, executed the will which is under attack in this appeal and in the will he made H. H. Houseman, the appellee, the independent executor without bond, sole devisee and beneficiary. Houseman was no relation of the testator. Stanford Ward died and when his will was offered for probate in the County Court of

Orange County, Voltaire Ward the appellant, a brother of the deceased, contested the will. The will was admitted to probate in the County Court and on appeal the case was tried in the district court of Orange County. In the district court the contestant alleged want of testamentary capacity by the deceased and the exercise of undue influence upon him by Houseman, the beneficiary under the will. The case was tried to a jury and two Special Issues were submitted. Special Issue No. 1 inquired whether the deceased had testamentary capacity. The jury answered this Special Issue "yes". Special Issue No. 2 inquired whether the execution of the alleged will was procured by undue influence on the part of Houseman. This issue the jury was unable to answer. The trial court received the incomplete verdict. After notice and hearing the trial court granted the appellee's motion for judgment admitting the will to probate. The appellant has duly perfected his appeal from that judgment.

Appellant's first point is that, this action having been tried before a jury and the jury having returned its verdict answering Special Issue No. 1, and having advised the court that it was not able to agree on an answer to Special Issue No. 2, the court having received the verdict and ordered the same filed and having discharged the jury before it answered Special Issue No. 2, no valid judgment could have been rendered by the court because the pleadings and the proof raised an issue of fact on the question of undue influence, and the court was without authority to ignore the jury's failure to bring in a verdict in answer to Special Issue No. 2 or to find as a matter of law that an answer to Special Issue No. 2 was unnecessary. The second point is that the trial court erred in granting the proponent's motion for judgment after the return of the incomplete verdict. The third point is that the pleadings and proof raised an issue of fact for the determination of the jury and it was affirmative error on the part of the trial court to enter judgment in favor of proponent of the will upon the incomplete verdict of the jury. The fourth point is that the trial court erred in finding that

there was no evidence of probative force raising the issue of undue influence in the procurement of the execution of the alleged will. These four points, in effect, contend that there was some evidence of undue influence by Houseman by which the will under attack was procured. All four points are briefed together by the appellant and they are so considered here.

The appellant makes no contest over the jury's finding that the deceased did have testamentary capacity. In his brief he says that there is no direct evidence on the issue of undue influence and that he relies upon circumstantial evidence presented.

Briefly summarized, the evidence in behalf of the appellant showed that: The deceased was a widower. His wife died in 1937. He was a confirmed alcoholic who had never been able to fully support himself and was in part dependent upon his family. He had no sense of responsibility about the use of money. He and his deceased wife were the owners of two tracts of land near Vidor in Orange County, one 6 acre tract on the Beaumont-Orange Highway and another 75 acre tract south of the highway. On the date of the making of the will the deceased gave to Houseman a lease on the highway property for 5 years with the right to renew the lease for another additional 5 years. The lease calls for a rental payment of $25.00 a month by Houseman, whereas previous rentals on the same property were only $10.00 per month. Deceased was paralyzed on his left side, drank a great deal and was easily influenced by money or whiskey. Deceased was over 60 years of age when he died, and had had syphilis since 1923. In addition to his drinking he used drugs, "dopey pills."

For the proponent of the will the evidence shows that: At the time of making the will the deceased went to his attorney and requested that the will be made. The will was not signed until a few days after the attorney drew it. Houseman did not discuss the will with the attorney and did not know that it was executed. The deceased told his attorney when he made the will that he did not want Houseman to know that the will had been executed. Houseman was not in the attorney's office at the time of signing the will. The deceased paid the attorney for drawing the will and requested the attorney to keep the will in his possession, which he did. There was evidence that the deceased, even though crippled and a drunkard, had better than an average mind. He was well read and spent a considerable part of his time reading books, magazines and articles. He belonged to a book club and read the Reader's Digest and Post. The deceased made the statement that he was going to make a will of his property to Houseman, "my boy". Deceased and Houseman were friends and deceased "thought lots of Henry." He didn't care anything for his brother and said they didn't approve of the way he lived or anything, therefore he didn't have much feeling for them, as they didn't respect him or help him; that he didn't have anyone, that his people didn't care anything about him and that he felt like he didn't have anything that belonged to them because they didn't seem to care anything for him. He said that Henry Houseman was the only true friend he had. Both of the doctors who testified in the lawsuit, one for the proponent and one for the contestant, said that in their opinion if a will were explained to the deceased he would be capable of understanding it.

We agree with the trial court that this evidence was no evidence of any undue influence exercised upon the deceased by the appellee, procuring the execution of the will. The evidence goes further than that, and, as we view it, it affirmatively establishes that the will was freely and voluntarily made without any undue influence being exercised upon the testator by anyone. We do not regard the fact that Houseman was made sole beneficiary of the deceased, without any provision being made for the brother of the deceased, the appellant, as being an unnatural disposition of the property of the testator under the circumstances. The appellant and other members of his family are highly respected citizens of Jefferson County. The deceased lived alone in an adjoining county and lived the kind of life of which his relatives did

458

not approve. Houseman seems to have been friendly and helpful to him. It was not unnatural that this lonely old man, looked upon as an outcast by his relatives, should leave his property by will to his friend rather than to his relatives under such circumstances. The evidence at most shows only an opportunity for undue influence by the appellee and does not show any intimation of the exercise of any influence upon the testator by the appellee. See McKenzie v. Grant, Tex.Civ.App., 93 S.W.2d 1160; Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Brodt v. Brodt, Tex.Civ. App., 91 S.W.2d 837. On the authority of Burgess v. Sylvester, Tex.Civ.App., 177 S.W.2d 271, we believe the trial court was correct in holding that there was no evidence of undue influence and disregarding the fact that the jury made no answer to Special Issue No. 2, regarding undue influence, and properly rendered judgment admitting the will to probate.

The judgment of the district court is affirmed.